COMMONWEALTH OF MASSACHUSETTS      *Complaint*

SUFFOLK, SS:                              SUFFOLK SUPERIOR COURT

Vincent F. Zarrilli,                      Civil Action for Violation of
                                          Civil Rights and Negligence

Vs
                                          03-5263-B

1. Kevin Joyce, Commissioner, Boston Dept of Inspectional Services, Defendant
2. City of Boston, Defendant
3. Boston Code Enforcement Program, Defendant
4. Boston Inspectional Services Dept, Defendant
5. James Cahill, Director, Boston Code, Defendant
6. Mark Meehan, Boston Code Program, Defendant
7. Wilbur Brown, Boston Inspectional Services, Defendant
8. Edward Kennedy, Boston Inspectional Services, Defendant
9. John Blackmore, Boston Code Dept., Defendant
10. Anthony Cillo, Boston Code Dept., Defendant
11. Christopher Stockbridge, Boston Code Dept., Defendant
12. Dan Hogan, Boston Municipal Court, Defendant

## PARTIES

1. Vincent F. Zarrilli of Box 101, Hanover Station, Boston, MA 02113

2. Kevin Joyce and the City of Boston are liable as masters for the tortious acts of all other listed defendants pursuant to the well-established master-servant legal relationship. They have offices at 1010 Mass. Ave. and City Hall Plaza, Boston, MA.

3. The Boston Code Enforcement Program and James Cahill, Mark Meehan, Christopher Stockbridge, Anthony Cillo, John Blackmore have offices at 1010 Mass. Ave., Boston, MA 02119.

4. The Boston Inspectional Services Department inspector Wilbur Brown and Inspector Edward Kennedy have offices at 1010 Massachusets Ave, Boston, MA 02119.

5. Daniel Hogan is Clerk of the Boston Municipal Criminal Court at Post Office Square, Boston.

1

## FACTUAL BACKGROUND

6. Plaintiff, Vincent F. Zarrilli, was the owner and sole operator of a small, retail antique furniture store at 64 Salem Street, Boston. He had been at this location since April 26, 1980, for twenty-one years and had consistently followed the practice of the industry and displayed items on the sidewalk in front of the store. The sidewalk is 84" deep. The American Disabilities Act requires a 36" clearance. Zarrilli's maximum projection of items from the building outward is 24", thus leaving a clearance area of 60"; i.e., 24" more than is required by the above cited Disabilities Act.

7. For 20 years and 5 months, no incidents or complaints ever took place.

8. In early January 2000, a street lighting pole between 64 and 62 Salem Street, between Zarrilli's sidewalk and the adjoining store sidewalk, "Video Cinema", was knocked down by a passing vehicle. Zarrilli notified the Boston Deparatment of Public Works, who replaced the pole, but did a very shoddy job of smoothing the asphalt used to bond the pole to the sidewalk. A pothole of 1 ½ to 3 inches was left (see Exhibit1). In the ensuing months, Zarrilli and the operator of the adjacent store, Video Cinema, observed many people trip. The Public Works Dept. was notified by phone, but the repair was never made.

9. In early October 2000, a woman in her early thirties who has a limp and lives nearby and has walked past Zarrilli's store daily for 15 years, allegedly tripped by stepping into the above described pothole on a dark, rainy night wile folding her umbrella in preparation to enter the video store. She was unhurt, but complained to the Boston Code Enforcement who made no attempt to test the veracity of the complaint.

10. The Boston Code Enforcement then began an almost daily practice of issuing violation notices to Zarrilli in the amount of $200.00 each under MGL c40,s21d for displaying antique furniture on the sidewalk.

11. Zarrilli responded by filing Freedom of Information demand pursuant to MGL c66,s10, in essence, asking the Boston Code Enforcement Dept. for copies of violation notices of persons who also placed items on the sidewalk, the permit number and papers pertaining to any item that did, in fact, have a permit. Newspaper vending boxes with their exact location were photographed and submitted for exact identification. Several other nearby sidewalk displays were included (see Exhibit 2).

12. On October 31, 2000, the Boston Code Enforcement Dept. responded with Exhibit 3; to wit an admission that all the 50-100 sidewalk entities did not receive any violation notices and did not have permits.

13. On or about October 20, 2000, Zarrilli confronted Defendants Cahill and Meehan both verbally and in writing with the argument that they were employing arbitrary and capricious practices which legally amounted to unconstitutional discriminatory prosecution and enforcement.

14. Defendants responded (circa October 21, 2000) by sending an officer of the Boston Fire Dept., whose missions was to make a spontaneous inspection of plaintiff's premises. Zarrilli denied him entry.

15. On October 25, 2000 three of the violation tickets came up for a hearing in the Boston Housing Court before a clerk magistrate. The result was a fine of $100.00 for violation #A0528187-3. The clerk magistrate did not evaluate a written memorandum Zarrilli fined in open court at the hearing. She glanced at the front page, but made no effort to absorb the legal defense argument. "Collateral Estoppel" based upon a directed verdict as to the same issues and same parties received by Zarrilli in 1992. Zarrilli filed a notice of appeal of the $100.00 fine, but found there lies no appeal procedure. The Boston Code Department employee who prosecuted Zarrilli at the hearing was not a licensed attorney.

16. Throughout the end of October and the first four days of November 2000, Zarrilli refrained from placing items on the sidewalk, but suffered the loss of almost total revenue.

17. It should be noted that the nearby construction project so called "the Big Dig" has had a catastrophic effect on many North End small businesses; i.e., a reduction in sales volume since construction began in 1996 of between 35 and 60%. Plaintiff's business is in the 60% category.

18. On November 3, 2000, plaintiff, exasperated with no income, placed items on the sidewalk. Within a few hours, a city vehicle with three code enforcement officers stopped at the corner of Salem and Cross Streets. One walked to Zarrilli's store 35-40 yards away and placed a green ticket on his tore window. Another $200.00 fine. Zarrilli followed him back to the vehicle, which was parked next to 3 or 4 vending machines on the sidewalk without a permit. Zarrilli asked why those vending machines were not being cited and concurrently photographed the vehicle and the unlicensed vending boxes (see Exhibit 4). The vehicle drove away with the three code enforcement officers inside. Within 20 minutes two officers of the Boston Inspectional Dept. appeared at the store stating that they had received a complaint from the Boston Code Police that a woman had fallen[1] on the sidewalk and as a result were sent to make an inspection of the inside of the premises. Zarrilli denied their request whereupon Officer Kennedy said he would go to court and beget an administrative warrant to search Zarrilli's premises and that such warrant was obtainable without notice to Zarrilli.

19. It should be noted that Zarrilli is a senior citizen who has been subjected to substantial emotional distress and disruption of his 20 years plus business operations. The regular visits by uniformed Boston Code Police is harmful to a retail hitherto

---

[1] The woman "claiming" that she had fallen had taken place well over a month before hand.

business had always been considered an asset to the North End. In essence, the Boston Code Dept. has humiliated Zarrilli and destroyed his reputation.

20. At the aforementioned November 3, 2000 visit, BIS Officers Brown and Kennedy said that if they did in fact find any violations they would give Zarrilli time to correct them. Zarrilli then, at that Friday, November 3, 2000 meeting outside the store at 64 Salem St. said that he would probably let them inside to inspect on the following Monday, November 6, 2000.

21. In the interim period, Zarrilli decided that he was being discriminated against by the issuance of the tickets to him alone when so many others were using sidewalk space, but were not being prosecuted and on Monday, November 6, 2000, filed a civil action in the Boston Housing Court since it had jurisdiction of the Boston Code violation tickets which spelled out on their face that the fines were to be either paid to the Boston Housing Court or appealed to it.

22. At 3:00 p.m., Monday, November 6, 2000, when BIS Officers Kennedy and Brown arrived at the Plaintiff's premises at 64 Salem St. they found attached to a closed front door a note from Plaintiff advising them that he had that day filed a suit and left them a copy. Kennedy, Brown and possibly others reportedly were extremely irate and stayed near the premises for an hour or two waiting for Plaintiff who did not return.

23. Later, in the night-time of the same day, November 6, 2000 at 8:30 p.m. Kennedy and an unknown new officer appeared at 64 Salem St. and stood outside the door proclaiming that they had a warrant and would enter forcibly as soon as the Boston Police arrived. To the very substantial upset of Plaintiff, Kennedy would not give Plaintiff a copy of the warrant. Several emotionally charged hours went by as Plaintiff made frantic phone calls from inside the locked store to avert the threatened forcible entry to the Mayor's Hotline, Boston Police, etc. At midnight Plaintiff was advised by a friendly police officer that the Boston Police were not going to assist in that they determined that the warrant was only valid until 5:00 p.m. Plaintiff, up until that midnight comment, was unaware that the warrant was restricted to daytime usage since he was not given a copy. Had he been forwarded a copy he would have known that Kennedy and his accomplice were not validly on the sidewald and would have been substantially relieved.

24. On Tuesday, November 7, 2000, an emergency hearing on Plaintiff's request for a TRO and Defendant's request for a TRO was held in the Housing Court. Neither was allowed.

25. On Wednesday, November 8, 2000 Plaintiff, relying on Defendants Brown and Kennedy's word that he would have time to correct any violations, consented to a search of the premises. Instead, Kennedy and Brown and a swarm of City Inspectors descended. The search resulted in Defendant's learning that Plaintiff had constructed a small space in the rear of the store and was using it as a residence. They also found there existed no second means of egress and other related minor violations are immediately <u>condemned</u>

the premises and summoned City carpenters and within two hours boarded up the premises and evicted Plaintiff from his home and business (see Exhibit J ).

26. Defendants then arranged for approximately four weeks of residency for Plaintiff at the Charlestown YMCA and access to his store between 9-5 p.m. only[2]. (Note that the vast majority of prime business is done between 5-10 p.m. when the North End residents come home from work.) Defendants then proceeded to place a large sign on the front of the store informing the general public that something wrong had taken place.

27. The plywood boarding up of the premises remained until mid April 2001 when Defendants finally consented to its removal upon payment by Plaintiff of $650 for its removal.

28. On March 21, 2001, the Boston Housing Court issued an opinion and judgment of dismissal clearly stating that it did not have subject matter jurisdiction and suggested that Plaintiff file in Suffolk Superior Court.

## COUNT 1

That Defendants have engaged in arbitrary and capricious practices and breached their representation that Plaintiff would be given time to correct any violations which plaintiff had relied on to his detriment..

## COUNT 2

That Defendants have engaged in unconstitutional prosecution and enforcement to the great injury and harm of detriment..

## COUNT 3

That Defendants have violated 42 USC 1983

## COUNT 4

That an actual controversy exists that turns upon the constitutionality of MGL c40, s21d, which is permeated with vagueness and provides no appeal procedures from the decisions of hearing officers for code violations.[3]

## COUNT 5

---

[3] Access to his store meant that he had to be at the store at 64 Salem St at 9:00 a.m. and await a BIS employee with elective some drivers to remove his plywood barrier and permit access in the store.
[4] No transcript is kept of hearings. No paper was issued to Plaintiff as to his October 25, 2000 judgment.

5

That the representation by Officer Kennedy of the Boston Inspectional Services that a search warrant could be obtained without notice is unconstitutional and if such statute did, in fact exist, it should be nullified.

### COUNT 6

<u>Violation Statute.</u> Defendants violated MGL c111, s122, 127A and 105 and CMR 400.100 by demanding to enter plaintiff's premises between 8:30 and 11:30 in the night time on November 6, 2000 with an administrative warrant which clearly on its face was valid only until 5:00 p.m. This wrongful act which caused the plaintiff severe emotional distress was committed by defendants Edward Kennedy and an unknown accomplice, but who is an employee of the Boston Inspectional Services Dept. Defendant Kennedy further exacerbated his own wrongdoing by remaining outside the front door of plaintiff's premises at 64 Salem St. Boston for more than three hours shouting that he was waiting for the Boston Police to enter even if the front door had to be broken down, causing commotion in a manner which was audible to both neighbors and passersby. There comments were <u>slanderous.</u>

### COUNT 7

<u>Intentional Affliction of Emotional Distress.</u> Defendants above actions concurrently constituted the separate tort of the intentional affliction of emotional distress as the plaintiff now placed in great fear that the door would be broken down at any moment, made countless phone calls to the mayor's hotline seeking help, but to no avail[2].

### COUNT 8

<u>Injurious Falsehood/Slander.</u> Plaintiff submits that the above described acts of Defendants Kennedy and his unnamed accomplice constituted an injurious falsehood as they grew out of an unlawful warrant as will be shown below. The scene defendants Kennedy and his accomplice created resulted in a blackening of the plaintiff's name and reputation, as many, many neighbors and residents and visitors of the North End witnessed the events and how could reasonably conclude that the plaintiff had done something very wrong.

### COUNT 9

<u>No Due Process.</u> Defendants violated plaintiff's constitutional 14th amendment right to due process by not providing plaintiff with proper notice of pendency of actions which would affect his interest in property and liberty and afford him an opportunity to present his objections. A patent violation of 42 USC 1983.

### COUNT 10

6

<u>Deceit Violation of MGL c93a</u> – <u>NO SUBSTANTIAL BASIS FOR ISSUANCE OF WARRANT.</u>

1. The application for the warrant to enter 64 Salem St. included photos of a small garage at 131 Salem St.[4] which plaintiff operated as a self-service bargain outlet for 10 years. Defendants wrongfully and tortiously presented the clerk of the Boston Municipal Court with photos of that totally different address in seeking to beget a warrant for 64 Salem St.

2. Paragraph No. 6 of Kennedy's affidavit (exhibit 7) in support of his application for the warrant is filled with falsehoods – his use of the word debris on the sidewalk was calculated to arouse the BMC clerk to issue the warrant. There was not debris. There was antique furniture. Had plaintiff been accorded his 14th amendment right to a hearing, he would have filed a motion to strike the affidavit of Edward Kennedy of November 6.

3. The Kennedy affidavit is permeated with many other falsehood and part truths, but presented as total truths.

4. In short, the Kennedy affidavit is and was defective and potentially exposes Kennedy to a charge of the preornation of perjury, but the plaintiff had no opportunity before this seizure to raise these issues. Had a licensed attorney applied for the warrant, it is unlikely that the falsehoods would be present and the affidavit would be truly substantiated.

## COUNT 11

<u>Illegal Practice of Law</u>. Governing Massachusetts Decisional Law mandates that a corporation be represented in judicial proceeding only by a licensed attorney. Kennedy is not a licensed attorney. The result is that the warrant of November 6, 2000 is invalid and everything that resulted from it is wholly "void ab initio,"

## COUNT 12

That Defendant's unlawful seizure of the premises at 64 Salem St. Boston, MA on November 8, 2000 constituted an interference with both contractual relations and prospective advantage with his landlord of the previous 12 years; one, Albert Giorgio, who after expending time and substantial money to alter items which did not have to be altered were it not for an illegal search and seizure and administrative orders resulting from said search, became frustrated with all the aggravation and issued an eviction notice to plaintiff. (Exhibit A). The defendants attempt to enter the premises with an illegally obtained warrant was the proximate cause of the eviction action. The plaintiff's eviction from the premises by landlord A. Giorgio after 13 trouble free years was a result of defendants unlawful acts, to wit, illegal entry.

---

[4] 131 Salem St. is at least 2 blocks from 64 Salem St. Plaintiff had been a tenant there since April of 1990. The landlord, being placed in fear of receiving code violations his adjacent retail business – Sheldon's Bargain Outlet at 133 Salem St. being visited by a swarm of City Inspectors, decided to evict plaintiff in December of 2000.

7

### COUNT 13

That Defendant, Boston Code Police, on October 25, 2000 conducted an unlawful judicial hearing because it excluded the general public from attending.

### COUNT 14

That Clerk, Daniel Hogan of the BMC negligently handed over a warrant to an unauthorized non lawyer. He failed to conduct a hearing before issuing the warrant to determine that defendants did in fact have possible cause and allow photographs of 131 Salem St, Boston to be in part the basis of the issuance of a warrant applicable to 64 Salem St.

### COUNT 15

That Defendants interfered with plaintiff's contractual relation with the owner of real estate at 131 Salem St, which plaintiff had leased from the owner of Sheldon's dry good store where plaintiff maintained an additional store showroom type store and after defendant intimidated Sheldon, he was also evicted from the location. Unless Sheldon evicted Plaintiff from 131 Salem St, they threatened that he would be the subject of a warrant to examine their premises.

### COUNT 16

That on June 1, 2001 at 10:09 a.m., Defendants, Boston Code Police James Cahill and Mark Meehan committed an act of unconstitutional discriminatory prosecution by issuing violation no. 0555826-5 to Plaintiff for occupying City sidewalk without a permit while at the same time ignoring others similarly situated. A Boston Globe vending box stood 10 feet from the furniture Plaintiff placed on the sidewalk (see photo of Meehan and the Boston Globe vending box.) Exhibit no citation given to the Boston Globe Company for using sidewalk space without a permit.

### COUNT 17

That Defedentants Boston Code Police James Cahill and Mark Meehan on 6/1/01 engaged in acts of malicious prosecution for issuing citations for items being placed on the sidewalk for loading into a truck pursuant to an eviction order (see Exhibit C) from landlord, A. Giorgio, which they, the Defendants themselves caused.

### COUNT 18

On June 6, 2001, Defendants, Boston Code Police James Cahill and Mark Meehan committed an act of malicious prosecution by issuing citation #0556352-6, which in the amount of $1,000.00 for what is alleged – illegally dumping debris in the rear of 60 Salem St., a City park. Plaintiff Zarrilli had used the area to remove his items for a moving truck to pick up.

## COUNT 19

On January 16, 2001, Blackmore committed a constitutional tort by issuing a violation no. A0534916-4 at 7:52 a.m. to plaintiff for placing furniture on the sidewalk while failing to apply the same standard to others within sight doing the same thing -- placing items on the city sidewalk. Blackmore then, the same day, returned to 64 Salem St. at noon with defendants Kennedy and Brown and began to issue a second $200 violation ticket to plaintiff unless plaintiff removed the furniture. Plaintiff then asked Blackmore if he had issued a citation to the nearby Café Revello, which had six tables and 12 chairs outside. Blackmore, within full earshot of defendant Kennedy and Brown, said he had in fact done so. Plaintiff then asked whether he had cited the 5 newspaper vending boxes on the opposite corner of Salem and Cross Streets. Blackmore responded that the newspaper boxes were not obstructing. Plaintiff subsequently spoke with the owner/manager of Café Revello who said no violation ticket was received.

## REQUEST

1. That the Plaintiff be awarded one million dollars against Defendant, City of Boston.

Respectfully submitted,

Vincent F. Zarrilli
Box 101, Hanover Station
Boston, MA 02113
Phone: 617-523-9210
Fax: 617-523-6765

I HEREBY ATTEST AND CERTIFY ON
Dec. 1, 2003 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
Asst. Clerk.



EXHIBI

Pothole in

COMPOST

EXHIBIT 2nd 4

THOMAS M. MENINO, MAYOR  CODE ENFORCEMENT POLICE

*Exhibit C 3*

October 31, 2000

Mr. Vincent Zarrilli
Box 101 Hanover Station
Boston, MA. 02113

Dear Mr. Zarrilli,

    In reply to your letter dated October 24, 2000, concerning the eleven pages of photo you submitted of various newsboxes, flower pots etc., on the sidewalks of the North End of Boston.

The information below covers your two Freedom Of Information Request.

1. My department has no permits for the items listed in your eleven pages of photographs
2. My department has no record of violations issued, regarding the items listed in your eleven pages of photographs.

    However, the City of Boston, has removed several newsboxes from city sidewalks, that were in violation of City of Boston Ordinances at the various locations listed below:

| Washington/School Street | Charles/ Boylston Street |
|---|---|
| North Street | Newbury Street |
| Union Street | One Boston Place |
| Post Office Square | Boylston/ Tremont Street |
| Charles Street/ Boston Common | Milk/ Bromfield Street |
| Tremont/ Berkeley Street | Tremont Street |
| Park/ Tremont Street | Clarendon/ Tremont Street |
| Back/Bay Station | |

Sincerely,

Mr. James J. Cahill
Director
Code Enforcement

JAMES CAHILL, DIRECTOR, 152 North Street, Boston, MA 02109 (617) 635-4896