UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12387-RGS

VINCENT ZARRILLI

v.

KEVIN JOYCE, Commissioner, Boston Dept. of
Inspectional Services; CITY OF BOSTON; BOSTON CODE
ENFORCEMENT PROGRAM; BOSTON INSPECTIONAL
SERVICES DEPT.; JAMES CAHILL, Director,
Boston Code Dept.; MARK MEEHAN, Boston Code Program;
WILBUR BROWN, Boston Inspectional Services;
EDWARD KENNEDY, Boston Inspectional Services;
JOHN BLACKMORE, Boston Code Dept.; ANTHONY CILLO, Boston Code Dept.;
CHRISTOPHER STOCKBRIDGE, Boston Code Dept.; and
DANIEL MR. HOGAN, Boston Municipal Court

MEMORANDUM AND ORDER
ON VARIOUS MOTIONS TO DISMISS

June 15, 2004

STEARNS, D.J.

This somewhat diffusely composed pro se Complaint asserts nineteen counts against the City of Boston and a number of other defendants, most of whom are employees of the City of Boston's Code Enforcement Program or Department of Inspectional Services.[1] The lawsuit appears to have had its genesis in a dispute between the plaintiff and code

---

[1] The Complaint also names Daniel Hogan, the Clerk Magistrate of the Boston Municipal Court, in his personal capacity, and Kevin Joyce, the Commissioner of the Department of Inspectional Services, apparently in his official capacity, as there is no allegation that Joyce was personally involved in any of the events that gave rise to the Complaint. Although an agency head may be named in his official capacity in a suit seeking equitable relief, the Complaint contains no equitable prayer. Rather, as the Complaint notes, Joyce and his employer, the City of Boston, are being sued on a nonviable theory of respondeat superior. See Collins v. Harker Heights, 503 U.S. 115, 122 (1992); Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989).

enforcement officers over a sidewalk furniture display. According to the allegations of the Complaint, plaintiff Vincent Zarrilli was the owner of an antique furniture store located at 64 Salem Street in Boston's North End. Zarrilli, following "the practice of the industry," displayed some of his wares on the sidewalk in front of the store. After receiving a citizen complaint, code enforcement authorities "began an almost daily practice of issuing violation notices" to Zarrilli for obstructing the sidewalk. Zarrilli responded by filing a public records request, see G.L. c. 66, § 10, for copies of any violation notices issued to neighboring vendors, presumably with the intent of showing that he was being unfairly singled out by the officers.[2]

Matters escalated after Zarrilli confronted defendants Cahill and Meehan, employees of the Code Enforcement Program, and accused them of discriminatory prosecution. On November 3, 2000, Zarrilli was cited again for obstructing the sidewalk. After a verbal confrontation with the officers, Zarrilli received a visit from Department of Inspectional Services defendants Brown and Kennedy, who demanded to be admitted to the store to look for building code violations. Zarrilli refused consent, but tentatively promised to submit to an inspection on Monday, November 6, 2000. On the appointed day, Zarrilli filed suit in the Boston Housing Court. Brown and Kennedy, after being informed by Zarrilli of the lawsuit, repaired to the Boston Municipal Court where they obtained an administrative search warrant from the defendant Clerk Magistrate, Daniel Hogan. A stand-off at the store then ensued.

On November 8, 2000, Zarrilli relented and admitted the Inspectional Services

---

[2]According to the Complaint, the City admitted in response that no other violation notices had been issued.

officers after they promised that he would be given time to correct any violations. Upon learning that Zarrilli had constructed an illegal residential space in the rear of the store with no fire exit, the officers condemned and boarded the premises. Zarrilli regained control of the store in April of 2001 after paying a $650 fine.

## DISCUSSION

Zarrilli seeks $1,000,000 in damages in lost business income, emotional distress, and harm to his reputation. All counts are alleged indiscriminately against all defendants. The majority allege state law claims (including a challenge to the constitutionality of the statute prescribing procedures for the noncriminal disposition of violations of city ordinances). Four counts purport to allege violations of the federal civil rights act, 42 U.S.C. § 1983 (over which the state court has concurrent jurisdiction). These counts prompted the defendants (for reasons that are not altogether clear) to remove the case from Suffolk Superior Court, where it was originally filed, to the federal district court. As none of the federal claims are viable, these will be dismissed and the state law claims will be remanded to the Superior Court where, as the description of the lawsuit may indicate, they may be more appropriately resolved. See Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998).

Count 3 of the Complaint alleges violation of 42 U.S.C. § 1983 without elaboration. Section 1983 of the federal civil rights act "does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3rd Cir. 1996). Without the specification of a federally secured right, there is no cause of action under section 1983.

Count 9 alleges that defendants violated the Due Process Clause of the Fourteenth Amendment "by not providing plaintiff with proper notice of pendency of actions which would affect his interest in property and liberty and afford him an opportunity to present his objections." Although not precisely stated, it is apparent from the body of the Complaint that Zarrilli objects to the *ex parte* basis upon which the administrative warrant was issued by the Boston Municipal Court. That an administrative warrant may be issued *ex parte* without offending any constitutional interest has long been established. See, e.g., Marshall v. Barlow's, Inc., 436 U.S. 307, 316-317 (1978). The statutory authority of a Clerk Magistrate to issue such warrants has also been held constitutional. Commonwealth v. Posson, 182 Mass. 339, 342 (1902). Finally, to the extent that Zarrilli objects to the Clerk Magistrate's finding of probable cause, his performance of a judicial function in doing so confers absolute immunity from suit. See Butz v. Economou, 438 U.S. 478, 512-513 (1978); Commonwealth v. O'Neil, 418 Mass. 760, 767 (1994). Cf. Pierson v. Ray, 386 U.S. 547, 554 (1967).

Count 16 of the Complaint alleges discriminatory (or selective) prosecution, presumably in violation of the Fourteenth Amendment's Equal Protection Clause. A selective prosecution claim is "an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996). "[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926). Notwithstanding this broad presumption of regularity, a prosecutor's discretion is "subject to constitutional constraints." United States v. Batchelder, 442 U.S. 114, 125 (1979). One of these constraints, imposed by the Equal

4

Protection Clause, "is that the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" Armstrong, 517 U.S. at 464, quoting Oyler v. Boles, 368 U.S. 448, 456 (1962). The key to a successful equal protection claim is the showing of a discriminatory intent; a showing of disproportionate impact alone is insufficient. Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997). Cf. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (an equal protection claim may be brought on behalf of a "class of one," where the plaintiff is able to demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

The Complaint does not plead any basis on which a discriminatory animus in the constitutional sense could be inferred. Zarrilli does not contend that he was singled out for any reason related to membership in a protected class. Nor does he claim that there was an irrational basis for the issuance of the citations. He concedes that he was not only in violation of the sidewalk safety code, but it may be inferred from the Complaint that he was a major violator.[3] Count 19 simply repeats the same equal protection claim advanced in Count 16, involving another violation on another date, and fails for the same reasons.

## ORDER

As there is no foundational basis on which to maintain suit in federal court, for the reasons stated in Camelio v. American Federation, supra, the state law claims will be

---

[3] Zarrilli objects that minor violators, e.g., newspaper vendors, were not also cited. "If the selection is not otherwise discriminatory, it would be appropriate for . . . the police to pick out the major violator of a law to make an example 'in the expectation that general compliance will follow and that further prosecutions will be unnecessary.'" Commonwealth v. Franklin Fruit Co., Inc., 388 Mass. 228, 233 (1983).

remanded to the Suffolk Superior Court for further proceedings in accordance with the law of the jurisdiction with the greater interest in the underlying dispute.

                SO ORDERED.

                /s/ Richard G. Stearns

                _____
                UNITED STATES DISTRICT JUDGE