UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 1:03-CV-12387-RGS

| | |
|---|---|
| VINCENT ZARRILLI,<br>        Plaintiff<br>v.<br>KEVIN JOYCE, Commissioner,<br>Boston Dept. of Inspectional<br>Services; CITY OF BOSTON;<br>BOSTON CODE ENFORCEMENT<br>PROGRAM; BOSTON INSPECTIONAL<br>SERVICES DEPT.; JAMES CAHILL,<br>Director, Boston Code Program;<br>WILBUR BROWN, Boston<br>Inspectional Services; EDWARD<br>KENNEDY, Boston Inspectional<br>Services; JOHN BLACKMORE,<br>Boston Code Dept.; CHRISTOPHER<br>STOCKBRIDGE, Boston Code<br>Dept; and DANIEL HOGAN,<br>Boston Municipal Court,<br>        Defendants | VERIFIED AMENDED COMPLAINT |

INTRODUCTION

1. This is an action under 42 U.S.C. § 1983 to redress the deprivation of Plaintiff's federal Fourth (and Fourteenth) Amendment and state constitutonal (Article XIV) rights to be free from and secure from unreasonable searches and seizures of his property. The Defendants obtained an invalid administrative search warrant without probable cause and without a licensed attorney representing the city's inspectional code enforcement department in Court.

2. As a result of the deprivation of the Plaintiff's civil rights, the Plaintiff suffered damages to his person and

1

property, by having his property seized and thrown out into Salem Street, in the North End of Boston, and damaged and destroyed.

## JURISDICTION

3. This District Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343, 2201, 2202; 42 U.S.C. § 1983, and directly under the U.S. Constitution and under pendent jurisdiction.

## PARTIES

4. The Plaintiff, Vincent F. Zarrilli, currently resides in Charlestown, MA and has a P.O. Box 101, Hanover Station, MA 02113. At the times in question, Zarrilli ran and operated a small retail antique furniture shop at 64 Salem Street, North End, Boston.

5. Defendant Kevin Joyce is the former Commissioner of the City of Boston Inspectional Services Department, and the highest ranking, City policy-making official that oversaw inspections throughout the City of Boston. Joyce had offices at City Hall, City Hall Plaza, Boston, and at 1010 Massachusetts Avenue, Boston.

6. Defendant James Cahill is/was the Director of the City of Boston Code Enforcement Program, with an office at 1010 Massachusetts Avenue, Boston, MA.

7. Defendant Mark Meehan is/was an officer of the City of Boston Code Enforcement Program, with an office at 1010 Massachusetts Avenue, Boston, MA.

18. ~~required by the above cited authorities act.~~

18. For over 20 years, there were no incidents or complaints about Zarrilli displaying his wares on Salem Street.

19. In early January 2000, a street lighting pole between 62 and 64 Salem Street, between Zarrilli's sidewalk and the adjoining store sidewalk, "Video Cinema," was knocked down by a passing vehicle. Zarrilli notified the Boston Department of Public Works. The Department replaced the pole, but did a very shoddy job of smoothing the asphalt used to bond the pole to the sidewalk. A pothole of 1½ to 3 inches was left (see Exh. 1). In

4

1010 Massachusetts

9. Defendant Anthony Cillo is/was an officer of the City of Boston Code Enforcement Program, with an office at 1010 Massachusetts Avenue, Boston, MA.

10. Defendant John Blackman is/was an officer of the City of Boston Code Enforcement Program, with an office at 1010 Massachusetts Avenue, Boston, MA.

11. Defendant Wilbur Brown is/was an inspector with the City of Boston Inspectional Services Department, with offices at 1010 Massachusetts Avenue, Boston, MA.

12. Defendant Edward Kennedy is/was an inspector with the City of Boston Inspectional Services Department, with offices at 1010 Massachusetts Avenue, Boston, MA.

13. Defendant Daniel Hogan is the Clerk of the Boston Municipal Criminal Court, with offices at 10 Post Office Square, Boston, MA.

14. Defendant City of Boston Code Enforcement Program is the official city agency that enforces the City of Boston's code, with offices at 1010 Massachusetts Avenue, Boston, MA.

15. Defendant City of Boston Inspectional Services Department is the official city department that implements city policy on inspections with offices at City Hall, and 1010 Massachusetts Avenue, Boston, MA.

3

who has a limp and lives nearby, and has walked past Zarrilli's store daily for 15 years, <u>allegedly</u> tripped by stepping into the above described pothole on a dark, rainy night, while folding her umbrella, as she was to enter the video store. She was unhurt, but complained to the Boston Code Enforcement Department. The Department made no attempt to verify the woman's complaint.

21. Shortly thereafter, the Boston Code Enforcement Department began an almost daily practice of issuing violation notices to Zarrilli in the amount of $200 each under M.G.L. c. 40, § 21d for displaying antique furniture on the sidewalk.

22. Zarrilli responded by filing a Freedom of Information demand pursuant to M.G.L. c. 66, § 10, asking the Boston Code Enforcement Department for copies of violation notices for other persons who also placed wares on the sidewalk, the permit number and papers pertaining to any person who had a permit. Newspaper vending boxes with their exact location were photographed and submitted for exact identification. Several other nearby sidewalk displays were included (see Exh. 2). A r s

23. On or about October 20, 2000, Zarrilli confronted Defendants Cahill and Meehan, both verbally and in writing, that they were arbitrary and capricious in prosecuting and enforcing

5

incorporated under the laws of Massachusetts, and is responsible for its officials and its department's code enforcement and inspectional services program and makes and sets city policy. The City of Boston is a person under 42 U.S.C. § 1983.

## FACTUAL BACKGROUND

17. Plaintiff, Vincent F. Zarrilli, was the owner and sole operator of a small retail antique furniture store at 64 Salem Street, in the North End section of Boston. Since April 26, 1980, Zarrilli had been at this location, and for twenty-one years, had consistently followed the practice of the retail industry and displayed items on the sidewalk in front of the store. The sidewalk is 84 inches deep. The Americans With Disabilities Act, 42 U.S.C. § 12101, et seq., requires a 36 inch clearance. Zarrilli's maximum projection of items from the building is 24 inches, leaving a clearance of 60 inches, i.e., 24 inches <u>more</u> than

the ensuing months, Zarrilli [and the operator of the adjacent store, Video Cinema] observed many people trip on this pothole. The Public Works Department was notified by phone, but never repaired the pothole.

20. In early October 2000, a woman in her early thirties, who has a limp and lives nearby, and has walked past Zarrilli's store daily for 15 years, <u>allegedly</u> tripped by stepping into the above described pothole on a dark, rainy night, while folding her umbrella, as she was to enter the video store. She was unhurt, but complained to the Boston Code Enforcement Department. The Department made no attempt to verify the woman's complaint.

21. Shortly thereafter, the Boston Code Enforcement Department began an almost daily practice of issuing violation notices to Zarrilli in the amount of $200 each under M.G.L. c. 40, § 21d for displaying antique furniture on the sidewalk.

22. Zarrilli responded by filing a Freedom of Information demand pursuant to M.G.L. c. 66, § 10, asking the Boston Code Enforcement Department for copies of violation notices for other persons who also placed wares on the sidewalk, the permit number and papers pertaining to any person who had a permit. Newspaper vending boxes with their exact location were photographed and submitted for exact identification. Several other nearby sidewalk displays were included (see Exh. 2). A & 5

23. On or about October 20, 2000, Zarrilli confronted Defendants Cahill and Meehan, both verbally and in writing, that they were arbitrary and capricious in prosecuting and enforcing

FROM :                                    FAX NO. :                              Jun. 26 2002 10:17AM  P1

<< Interrupted Transmission >>

the code and selectively picking upon and imposing fines upon Zarrilli, such that it amounted to <u>unconstitutional, discriminatory prosecution and enforcement.</u>

24. On or about October 21, 2001, Defendants Cahill and Meehan had an officer from the Boston Fire Department make a spontaneous inspection of Plaintiff's premises. Zarrilli denied him entry.

25. On October 25, 2000, three of the violation tickets came up for hearing in the Boston Housing Court before a Clerk Magistrate. A fine of $100 was imposed for violation #A0528187-3. The Clerk Magistrate did <u>not</u> evaluate a written memorandum Zarrilli filed in open court at the hearing. She glanced at the front page, but made no effort to absorb Zarrilli's "Collateral Estoppel" legal defense based upon a directed verdict as to the same issues and same parties received by Zarrilli in 1992. Zarrilli filed a notice of appeal of the $100 fine, but found there is no appeal procedure. The Boston Code Department employee who prosecuted Zarrilli at the Clerk Magistrate's hearing was not a licensed attorney.

26. On October 31, 2000, the Boston Code Enforcement Department responded with Exh. 3/p 6 -- an admission that all the 50-100 sidewalk entities did <u>not</u> receive any violation notices and did not have permits.

27. Throughout the end of October 2000 and the first four days of November 2000, Zarrilli refrained from placing items on the sidewalk, and suffered the loss of $12.00 - 18.00 in revenue.

6

28. It should be judicially noticed that the nearby construction project known as the "Big Dig" has had a catastrophic, sales-reducing effect on many North End small businesses. Since the Big Dig construction began in 1996, the Plaintiff has suffered 60% losses in business.

29. On November 3, 2000, an exasperated Plaintiff, with no income, placed items on the sidewalk. Within a few hours, a city vehicle with three code enforcement officers stopped at the corner of Salem and Cross Streets. One officer walked to Zarrilli's store 35-40 yards away and placed a green ticket on his store window, fining Zarrilli $200. Zarrilli followed him back to the vehicle, parked next to 3 or 4 vending machines on the sidewalk, without a permit. Zarrilli asked the officer why those vending machines were not being cited and concurrently photographed the vehicle and the unlicensed vending boxes (see Exh. 4). The City vehicle drove away with the three code enforcement officers inside. Within 20 minutes, two officers of the Boston Inspectional Department appeared at Zarrilli's stating that they had received a complaint from the Boston Code Police that a woman had fallen[1] on the sidewalk, and as a result were sent to make an inspection of the inside of the premises. Zarrilli denied the request for an inside inspection. Officer Kennedy said he would go to court and get an administrative

---

[1] The woman claiming that she had fallen had taken place well over a month beforehand. If she had fallen in the points outside the premises, there would have been no reason to inspect the inside of Zarrilli's premises.

7

warrant to search Zarrilli's premises and that such warrant was obtainable <u>without</u> notice to Zarrilli.

30. Zarrilli is a senior citizen who has been subjected to substantial emotional distress and disruption of his 20 years plus business operations. The regular visits by uniformed Boston Code Police is harmful to a retail business that has always been considered an asset to the North End. The Boston Code Department has humiliated Zarrilli and damaged his reputation.

31. At the aforementioned November 3, 2000 visit, BIS Officers Brown and Kennedy said that if they did in fact find any violations, they would give Zarrilli time to correct them. Zarrilli then, at that Friday, November 3, 2000 meeting outside the store at 64 Salem Street, said that he would probably let the officers inside to inspect on the following Monday, November 6, 2000.

32. In the interim period, Zarrilli decided that he was being unconstitutionally and capriciously discriminated against by the issuance of the tickets to him alone, when so many others were using sidewalk space, but were not being ticketed, fined or prosecuted.

33. On Monday, November 6, 2000 Zarrilli filed a civil action in the Boston Housing Court, as fines were to either paid to the Boston Housing Court or appealed to it.

34. At 3:00 pm Monday, November 6, 2000, BIS Officers Kennedy and Brown arrived at the Plaintiff's premises at 64 Salem Street. Attached to the Plaintiff's closed front door was a note

from Plaintiff Zarrilli advising the officers that he (Zarrilli) had that day filed a civil suit and left them a copy of said suit. Kennedy, Brown and possibly others reportedly were extremely irate and stayed near the premises for an hour or two

that afternoon.

35. Later, at 8:30 pm, on the same November 6, 2000, Kennedy and an unknown other officer appeared at 64 Salem Street and stood outside the door, claiming that they had a warrant and would forcibly enter Zarrilli's business as soon as the Boston Police arrived. Kennedy refused to give Plaintiff a copy of the warrant. Several emotionally charged hours went by as Plaintiff

Police from inside his locked store, to avert the threatened forcible entry. At midnight, Plaintiff was advised by a friendly police officer that the Boston Police were not going to assist, as the administrative warrant was a daytime warrant valid only until 5:00 pm. Plaintiff, up until that midnight comment, was unaware that the warrant was restricted to daytime usage since he was not given a copy. Had he been provided a copy, the Plaintiff would have known that Kennedy and his ~~~~~~~~~ were not validly on the sidewalk and the Plaintiff would have been substantially relieved.

36. On Tuesday, November 7, 2000, an emergency, untranscribed[2] hearing on Plaintiff's request for a TRO and

---

[2] No transcript is kept of hearings.

9

Defendant's request for a TRO was held in the Housing Court. Neither request was allowed.

37. On Wednesday, November 8, 2000, Plaintiff, relying on Defendants Brown's and Kennedy's word that the Plaintiff would have time to correct any violation, consented to a search of the premises. Unbeknownst to Zarrilli, Kennedy and Brown and a swarm of City Inspectors descended upon the Plaintiff's constitutionally protected place of business. In the ensuing search, the Defendants learned that the Plaintiff had constructed a small space in the rear of the store and was using it as a residence. The Defendants also found there existed no second means of egress. The Defendants, without further notice or due process of law, immediately <u>condemned</u> the premises and summoned City carpenters. Within two hours, the City boarded up the premises and evicted Plaintiff from his home and business (see Exh. 5). APT

38. Defendants then arranged for approximately four weeks of residency for Plaintiff at the Charlestown YMCA and access to his store between 9-5 pm only,[3] denying the Plaintiff access during prime business time of 5-10 pm, when the North End residents come home from work. Defendants proceeded to place a large sign on the front of the store informing the general public that something wrong had taken place. EXHIBIT 37 APP

---

[3] Access to his store meant that the Plaintiff had to be at the store at 64 Salem Street at 9:00 am and await a BIS employee to remove the plywood and permit access in the store.

39. The plywood boarding up of the premises remained until mid-April 2001, when Defendants finally consented to its removal upon payment by Plaintiff of $650 for its removal.

40. On March 21, 2001, the Boston Housing Court issued an opinion and judgment of dismissal, stating that it did not have subject matter jurisdiction and suggested that Plaintiff file in Suffolk Superior Court.

## 42 U.S.C. § 1983 CAUSE OF ACTION

41. Plaintiff realleges and incorporates into this cause the allegations contained in paragraphs 1 through 40.

42. The Defendants, acting under color of state law, deprived the Plaintiff of his Fourth and Fourteenth Amendment rights under the U.S. Constitution, and under Articles XIV of the Massachusetts Declaration of Rights, to be secure and free from unreasonable searches and seizures.

43. The Defendants knew they were violating the Plaintiff's clearly established civil rights.

44. The Defendants acted pursuant to the unconstitutional, unlawful and void abinitio policy of allowing city code and inspectional officers to obtain search warrants without probable cause and by going to Court, representing the City, without being a licensed attorney, as required by Supreme Judicial Court rulings. *Varney v. WMP y at MASS 79* [handwritten]

45. As a direct result of the Defendants' actions and unconstitutional policies, the Plaintiff has been deprived of his civil rights, and has suffered damages to his property and

11

business reputation, and has had to pay unlawful and unjust fines.

46. The Defendants have engaged in arbitrary and capricious and unconstitutional practices and failed to afford Plaintiff time to correct any violations, as promised and as Plaintiff relied upon to his detriment.

47. Defendants have engaged in unconstitutional, discriminatory prosecution and code enforcement to the great injury, harm, and detriment of the Plaintiff.

48. M.G.L. c. 40, § 21(d) is unconstitutional in that it provides no appeal procedures from the decisions of hearing officers for code violations.

49. BIS Officer Kennedy unconstitutionally obtained a search warrant without notice, and without probable cause.

50. The Defendants violated the Fourth and Fourteenth Amendments and Art. XIV of the Massachusetts Constitution, and M.G.L. c. 111, § 122, 127A, and 105, and C.M.R. 400.100 by demanding to enter Plaintiff's premises between 8:30 and 11:30 in the night time on November 6, 2000 with an administrative warrant which, on its face, was valid only until 5:00 pm. These wrongful, unconstitutional acts committed by Defendants Edward Kennedy and an unknown accomplice, and an employee of the Boston Inspectional Services Department, caused Plaintiff severe constitutional injury. Defendant Kennedy further exacerbated his own wrongdoing by remaining outside the front door of Plaintiff's premises at 64 Salem Street, Boston for more than three hours

shouting that he was waiting for the Boston Police to enter, even if the front door had to be broken down, causing commotion in a manner which was audible to both neighbors and passersby. These comments were slanderous.

51. The application for the warrant to enter 64 Salem Street included photos of a small garage at 131 Salem Street which Plaintiff operated as a self-service bargain outlet for ten (10) years. Defendants wrongfully, falsely, and unconstitutionally presented the Clerk of the Boston Municipal Court with photos of that totally different address in seeking to get a warrant for 64 Salem Street.

52. Paragraph No. 6 of Kennedy's Affidavit (Exh. B) in support of his application for the warrant is filled with falsehoods, and half truths. His use of the word "debris" on the sidewalk was calculated to arouse the BMC Clerk to issue the warrant. There was no debris. There was antique furniture. Had Plaintiff been accorded his Fourteenth Amendment right to a hearing, he would have filed a motion to strike the November 6, 2000 Affidavit of Edward Kennedy.

53. Defendants' unlawful seizure of the premises at 64 Salem Street, Boston, MA on November 8, 2000 interfered with Plaintiff's relations with his landlord of the previous 12 years, Albert Giorgio, by the Defendants' illegal search and seizure and administrative orders. The Defendants' attempt to enter the premises with an illegally obtained warrant was the proximate cause of the Plaintiff's eviction action. The Plaintiff's

eviction from the premises by landlord A. Giorgio after 13 trouble-free years was a result of Defendants' unlawful acts and illegal entry. CK HI00 C, A P 3

54. 131 Salem Street is at least two blocks from 64 Salem Street. Plaintiff had been a tenant there since April of 1990. The landlord, being placed in fear of receiving code violations for his adjacent retail business -- Sheldon's Bargain Outlet at 133 Salem Street being visited by a swarm of City Inspectors, decided to evict Plaintiff in December of 2000.

55. Defendant Daniel Hogan, Clerk of the BMC, unlawfully handed over a warrant to an unauthorized non-lawyer, failed to conduct a hearing before issuing the warrant to determine that Defendants did in fact have probable cause and allowed photographs of 131 Salem Street, Boston to be in part the basis of the issuance of a warrant applicable to 64 Salem Street.

56. On June 1, 2001 at 10:09 am, Defendants Boston Code Police James Cahill and Mark Meehan committed an act of unconstitutional, discriminatory prosecution by issuing violation No. 0555826-5 to Plaintiff for occupying City sidewalk without a permit while at the same time ignoring others similarly situated. A Boston Globe vending box stood 10 feet from the furniture Plaintiff placed on the sidewalk (see photo of Meehan and the Boston Globe vending box). CKOUT 2, Y AP 7. No citation was given to the Boston Globe Company for using sidewalk space without a permit.

57. Defendants Boston Code Police James Cahill and Mark Meehan on June 1, 2001 maliciously prosecuted Plaintiff by using

14

citations for items being placed on the sidewalk for loading into a truck pursuant to an eviction order (see Exh. C) from landlord, A. Giorgio, which they, the Defendants themselves, caused.

58. On June 6, 2001, Defendants Boston Code Police James Cahill and Mark Meehan maliciously prosecuted Plaintiff by issuing citation No. 0556252-6 ... what is alleged -- illegally dumping debris in the rear of 60 Salem Street, a City park. Plaintiff Zarrilli had used the area to remove his items for a moving truck to pick up.

59. On January 16, 2001, Defendant Blackmore violated Plaintiff's constitutional rights by issuing a violation No. A0534916-4 at 7:52 am to Plaintiff for placing furniture on the sidewalk while failing to apply the same standard to others within sight doing the same thing -- placing items on the city sidewalk. Blackmore then, the same day, returned to 64 Salem Street at noon with Defendants Kennedy and Brown and began to issue a second $200 violation ticket to Plaintiff unless Plaintiff removed the furniture. Plaintiff then asked Blackmore if he had issued a citation to the nearby Café Revello, which had six tables and 12 chairs outside. Blackmore, within full earshot of Defendant Kennedy and Brown, said he had in fact done so. Plaintiff then asked whether he had cited the five newspaper vending boxes on the opposite corner of Salem and Cross Streets. Blackmore responded that the newspaper boxes were not obstructing. Plaintiff subsequently spoke with the owner/manager of Café Revello who said no violation ticket was received.

## PRAYERS FOR RELIEF

The Plaintiff respectfully requests and prays this Court to:

1. Preliminarily enjoin, pursuant to F. R. Civ. P. 65, the Defendants, their agents and attorneys, from denying the Plaintiff his civil rights.

2. Return to the Plaintiff any unlawfully assessed and paid fines.

3. Award Plaintiff compensatory and punitive damages and other relief, as the interests of fairness and justice require.

## JURY CLAIM

Plaintiff, Vincent Zarrilli, claims a trial by jury on all issues, under F. R. Civ. P. 38, under Art. 15 of the Massachusetts constitution and under the Seventh Amendment to the U.S. Constitution.

## VERIFICATION

I, Vincent F. Zarrilli, Plaintiff herein, hereby verify and swear, under the penalties of perjury, that the facts and statements contained in this Verified Amended Complaint, are true and accurate and based upon my personal knowledge and information.

Signed this June 14, 2004.

Vincent F. Zarrilli, pro se
Box 101, Hanover Station
Boston, MA 02113
617-523-9218, 9210
Fax 523-6765

June 14 2004

16

## CERTIFICATE OF SERVICE

I, Vincent F. Zarrilli, hereby certify that I have served, by first class mail, this June 14, 2004, this Verified Amended Complaint, upon:

1.  Francis GoBourne or his successor
    Assistant Attorney General
    Government Bureau/Trial Division
    200 Portland Street, 3rd Floor
    Boston, MA 02114
    Attorney for Defendant Daniel Hogan

2.  Thomas R. Donohue
    Layla N. Avila
    Assistant Corporation Counsel
    City of Boston Law Dept.
    Room 615, City Hall
    Boston, MA 02201
    Attorneys for Defendants City of Boston, Kevin Joyce, Wilbur Brown, John Blackmore, Anthony Citto, and Christopher Stockbridge, and James Cahill and Boston Code Enforcement Program and Boston Inspectional Services Department.

and the original upon the Clerk, U.S. District Court, 1 Courthouse Way, Boston, MA 02210.

Signed under the penalties of perjury this June 14, 2004.

_____
Vincent F. Zarrilli

17